William B. Benjamin v. Commissioner.
Benjamin v. Commissioner
Docket No. 22748.
United States Tax Court
T.C. Memo 1955-286; 1955 Tax Ct. Memo LEXIS 52; 14 T.C.M. (CCH) 1107; T.C.M. (RIA) 55286; October 26, 1955
William B. Benjamin, 2215 North Melvin Street, Philadelphia, Pa., pro se. John J. Madden, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner *53 determined deficiencies in petitioner's income tax and additions thereto as follows: Addition
Addition
under
under
section
section
Year
Deficiency
291(a)
293(b)
1942
$ 553.32
$ 138.34
$ 276.66
1943
1,641.29
410.32
820.64
1944
19,096.68
4,774.17
9,548.34
1945
24,320.55
6,080.14
12,160.28
Totals
$45,611.84
$11,402.97
$22,805.92
The issues involve the correctness of the Commissioner's determination that, for the year 1942, petitioner failed to report income from salary and that for the years 1943 through 1945 he failed to report income from two business ventures. Petitioner has stipulated that if it is found by this Court that there are deficiencies in tax for these years, then he is liable for both the 50 per cent and the 25 per cent additions under section 293(b) and section 291(a), respectively, of the Internal Revenue Code of 1939. Findings of Fact Petitioner is a resident of Philadelphia, Pa. He did not file any Federal income tax returns for any of the years 1942 through 1945. During the calendar year 1942 petitioner received a salary as an employe of W. E. Guttman and Co., Philadelphia, in the amount of $3,380. *54 For the calendar years 1943 and 1944 he had net incomes of $7,569.74 and $37,906.87, respectively, from a business conducted by him under the name of Gramercy Parts Co. Sometime in 1942 petitioner, while still an employee of W. E. Guttman and Co., opened a store on or near the campus of the University of Pennsylvania in Philadelphia under the name of Varsity Shops. He employed a tailor and later a part-time clerk and took orders from samples of cloth for made-to-measure clothes. A haberdashery line was installed to help carry the overhead. The store was not a success and petitioner secured a compromise of his creditors' claims in 1944. In 1943 petitioner went to New York and left the business to the tailor, although he continued to pay some of its bills until as late as 1945. Sometime in 1944 petitioner purchased all of the stock of Metropolitan Machine Shops, Inc., located in New York, for $800. The corporation had been organized in 1943 and at the time petitioner purchased its stock it had a deficit of approximately $29,000, and its machinery was subject to a $19,000 mortgage. The purchase had been suggested by a man who did subcontracting work for Gramercy Parts Co. and who *55 promised petitioner that if the former's son and daughter were made stockholders, he would give the new company a certain amount of work. This business never developed although the son and daughter each received one-third of the stock. Petitioner contributed to the capital of Metropolitan Machine Shops, Inc. an additional sum of approximately $50,000, but the other stockholders invested nothing and eventually turned over their shares to him so that he was the sole stockholder during 1945. The corporation's income and losses from December 1, 1943, to April 22, 1946, were as follows: Net Income
Net Loss
December 1, 1943, to No-
vember 30, 1944
$33,148.27
December 1, 1944, to No-
vember 30, 1945
$81,971.72
December 1, 1945, to April
22, 1946
$46,075.27
Petitioner began to factor the corporation's accounts receivable in 1944 and during 1945 and 1946 he continued this practice and also factored fictitious accounts receivable in large amounts beginning about the middle of 1945. During 1945 he withdrew $45,167.40 from the corporation for his own purposes without the formality of dividend declarations. Over the three-year period 1944 through 1946, he *56 withdrew approximately $300,000 from the corporation in this manner. Petitioner was indicted in 1946 on 20 counts charging larceny and grand theft in connection with the sales of the fictitious accounts receivable. He pleaded guilty in December 1946 to two counts of the indictment and was sentenced to consecutive terms of five to ten years in New York State Prison. The stipulation of facts is incorporated herein by this reference. Opinion KERN, Judge: The petitioner's first contention is that his salary income for 1942 and business income for 1943 were wiped out by losses sustained in those years in a clothing venture operated by him under the name of Varsity Shops. Unfortunately, petitioner was unable to produce any of the books or records of this business or any former employee, accountant, or lawyer familiar with its financial affairs to support his rather vague testimony as to its receipts and disbursements. He testified that the books had been taken by either the representatives of his creditors or the District Attorney's office, but, apparently, no attempt was made to obtain them or to have them made available at the hearing. The only shred of corroborating evidence with *57 respect to such losses is what purports to be a profit and loss statement of Gramercy Parts Co. for the year ended December 31, 1944, which the parties have stipulated was attached to a purported income tax return for 1943 signed by the petitioner but never filed. The statement includes as part of its schedule carry-over losses of Varsity Shop for the "years ending 1942 [and] 1943" in the amounts of $6,393.45 and $6,093.69, respectively. No other supporting figures are given and we are unable to see how this recitation of unsupported arithmetical conclusions can be of comfort to petitioner, especially since it is part of a document which purports to set out petitioner's income from the business conducted by him under the name Gramercy Parts Co. for the year 1944 in the amount of $14,316.85 before any credits for carry-over losses, whereas the parties have stipulated his income from that source and for that period was $37,906.87. On the record before us we must hold that petitioner has failed to sustain his burden of proving that he incurred losses in 1942 and 1943 sufficient to reduce or eliminate the income stipulated to have been earned in those years. Since no losses have been *58 established for either 1942 or 1943, there are no carry-overs that can be applied to petitioner's stipulated income from Gramercy Parts Co. for 1944, and the Commissioner's determination as to this year must also be sustained. Even if the carry-overs from 1942 and 1943, as set forth in the foregoing profit and loss statement, were accepted at face value, petitioner's case for 1944 would still fail since there is nothing in the record with respect to his income for 1941, to which year such losses would first have to be carried back before they could be carried forward to 1944, and, thus, petitioner has failed to show that his income in 1941 would not have fully absorbed any such carry-backs. Section 122(b)(2)(A); Regulations 111, section 29.122-1, 4. Petitioner contends with respect to the deficiency for 1945, first, that the monies withdrawn by him from the Metropolitan Machine Shops, Inc., were a return of his capital investment, and, second, that since they represented the proceeds of the sale of non-existent accounts receivable, the withdrawals could not be income. However, according to petitioner's own testimony, he advanced at the most $70,000 to the corporation and withdrew *59 therefrom approximately $300,000, or far more than enough to repay his capital advances. No evidence was presented that any part of the withdrawals was in fact repayment of advances or in partial liquidation of the corporation. The parties have stipulated that the corporation had a net income of $81,971.72 for the taxable year December 1, 1944, to November 30, 1945, and this was almost twice the amount of the withdrawals which petitioner had conceded were made during 1945 for his own use. On the record before us, this amount, $45,167.40, constituted a dividend. Section 115(a), (b); Regulations 111, section 29.115-1, 2. The fact that no dividends were formally declared is immaterial. , affd. (C.A. 2, 1955) . Petitioner further argues that the proceeds of the illegal factoring of fictitious accounts could not be income to the corporation or to him. However, we need not decide this issue since the evidence has established that the corporation was engaged in business during 1945 and that many of the accounts receivable factored by petitioner in that year were legitimate assets which it was entitled to sell. Nor is *60 there any evidence in the record upon which an allocation can be made of the amount distributed to petitioner from his criminal, as distinguished from his lawful, factoring activities so that even if the law were as petitioner argues it is, he could not prevail. We must hold that the petitioner has failed to sustain his burden of proving that the Commissioner erred in his determination of a deficiency for 1945. We realize that petitioner faced grave difficulties in proving his case before us without adequate professional assistance and long after the taxable years, and we have accordingly considered the record in this proceeding not only carefully but also sympathetically. However, not even the most sympathetic approach can enable us to find the legal basis for concluding that respondent's determinations were erroneous. The fact that petitioner's proof was difficult to obtain or present does not relieve him of the burden. . The exemptions to which petitioner is entitled have been stipulated and will be given effect in a computation under Rule 50. Decision will be entered under Rule 50.